UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20046-CR-Lenard/Garber

UNITED STATES OF AMERICA,

v.

CHRISTIAN FIGUEROA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Joan A. Lenard. Pursuant to such reference, the Court has received the defendant Figueroa's Motion to Suppress [DE 370] and the government's response in opposition. A hearing on said Motion was held on December 15th, 2009. The defendant appeared with his attorney of record, Philip R. Horowitz, Esquire, and the government was represented by Assistant United States Attorney Scott M. Edenfield.

## FACTUAL BACKGROUND

On June 4, 2009 a grand jury in the Southern District of Florida returned a superseding indictment setting forth additional criminal charges against the defendant Christian Figueroa and also including charges set forth in Count 18 of the original indictment.[1] Such additional charges were based upon a recovery of narcotics and firearms in the defendant's residence and were set forth in Counts 19-21 charging possession with the intent to distribute heroin on specific dates. He was also

---

[1] Count 18 was ultimately dismissed by the government based upon a misidentification of a voice heard on an authorized wiretap originally identified as Christian Figueroa. The government acknowledged that such voice was not that of this defendant and appropriately moved to dismiss Count 18 in the superseding.

charged, in Counts 22 and 23, with possession of a firearm in furtherance of a drug trafficking offense and possession of a firearm by a convicted felon.

Arrest warrants were issued based upon the charges set forth in the original indictment. On January 23, 2009, at about 6:00 A.M., one of the arrest warrants was served on the defendant at his residence in Miami-Dade County. The defendant, who was apparently sleeping, was awakened and placed under arrest. The defendant executed a consent to search his premises[2]. Such search revealed the presence of approximately fifty (50) grams of heroin and two (2) guns and rounds of ammunition.

The defendant's Motion to Suppress is based upon two claims: (1) the defendant did not consent to the search of his residence because of his impairment due to his earlier use of heroin, and (2) even if such consent is deemed to be valid, the "indictment was based solely on evidence that was wrongly attributed to the defendant" and that his arrest was illegal[3] The Court will now consider such arguments.

## DISCUSSION

Considering the defendant's claim that his arrest was unlawful, such argument is based upon the defendant's belief that since agents mistakenly attributed calls to him that, in fact, were those of his brother, he asserts that the arrest warrant issued based on the superseding indictment was invalid and that his arrest pursuant to such warrant was illegal.

In support of his unlawful arrest claim, the defendant places reliance on *United States v. Medearis*, 236 F.Supp.2d 977 (D.S.D. 2002). Such reliance is misplaced, however, since the arrest

---

[2] The defendant does not deny executing the consent to search form but essentially claims that it was an involuntary execution since he was under the influence of heroin, to which he was addicted.

[3] Such arguments are set forth in the defendant's Motion to Suppress.

in *Medearis* was illegal and statements and items obtained thereafter were suppressed even though *Medearis* had consented to giving statements and the seizure of evidence. *Medearis* conflicts with the cause *sub judice* since, and as explained hereafter, Figueroa's arrest was lawful and valid.

It is universally acknowledged that an indictment returned by a properly constituted grand jury, valid on its face, cannot be challenged because of a defendant's claim that the evidence presented to that grand jury was inadequate. *United States v. Calandra*, 414 U.S. 338 (1974); *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Markey*, 693 F.2d 594, 596 (6th Cir. 1982) which tells us that "[T]he validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate or hearsay."

The ruling of the Fifth Circuit Court of Appeals in *Rodriguez v. Ritchey*, 539 F.2d 394 (5th Cir. 1976), on rehearing *en banc*, 556 F.2d 1185 (1977), states *inter alia* as follows:

> It is true that the fourth amendment does command that probable cause support a warrant. However, just because a person validly arrested is later discovered to be innocent does not make the arrest "unlawful" for fourth amendment purposes. To the contrary, it has long been held that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides authority for an arrest warrant to issue. The conclusion to be drawn is readily apparent; since there was no unconstitutional arrest, no claim has been stated. . .

*Id.* At 1190-91.

Thus, the arrest of the defendant Figueroa was lawful and not in violation of any rights, constitutional or otherwise, to which he was entitled.

Turning to the issue of the defendant's execution of the consent to search form, the defendant claims that at the time he executed the consent form he was suffering from the effects of heroin withdrawal which he claims to have used the evening prior to his arrest. Testimony offered at the motion hearing by Special Agent Jose A. Perez (Perez) of the Federal Bureau of Investigation

(FBI) revealed that he was present at the arrest of the defendant as part of a law enforcement team.[4] Regarding the defendant's claim that he was under the influence of heroin at the time of executing the consent to search form, Perez testified that he first approached the defendant, then under arrest, in order to seek the defendant's consent to search his residence. Perez was accompanied by Special Agent Lawson of the FBI. Perez testified that he and Lawson took the defendant off to the side and told him that they wanted to search his residence. In order to do so, Perez told the defendant that he needed his consent for such search and then explained the consent to search form to the defendant. Such conversations were in English and Spanish and the defendant acknowledged that he understood English. Perez testified that the defendant was coherent during this conversation and responded to Perez's questions. Perez did testify that the defendant "seemed a little dazed. But I understood that or thought that would be, again, because it was six o'clock in the morning. The SWAT team had just pretty much broken down his door and made entry into the house. . . .It wasn't until afterwards that I thought maybe that he may have been under the influence."[5] Perez also testified that he had no trouble in understanding the defendant nor did the defendant have any difficulty in understanding Perez.

The consent to search form was received in evidence. The defense acknowledged that the defendant did indeed execute such form which was explained to him by Perez. The defendant, able to write and speak English, read a couple of lines from the form to Perez. Perez then read the form to the defendant who did not express any confusion or ask any questions about the form. The

---

[4] All references to the testimony of Agent Perez are found in the transcript of his direct testimony, pages 41 through 52.

[5] Hearing transcript, at page 44.

defendant then executed the form.  Perez testified that neither he or any other agents made any threats to the defendant in an effort to get him to sign the consent form.

Perez also testified that he has been an FBI agent for over six years and has had the opportunity to observe persons who were either intoxicated or under the influence of controlled substances.  He added that at the time that the defendant executed the consent form he did not appear to be intoxicated at the search scene.  The defendant was asked whether there were any weapons or syringes in the house and the defendant responded there were not.  The defendant was then placed in a police vehicle and transported to a command post for processing.

During his processing several hours after his arrest, Perez noticed that the defendant was seated in a chair and his eyes were moving about the room and his head was also moving around. The defendant was asked if he was okay and he acknowledged that he had used heroin the night prior to his arrest.  The defendant did not mention that he had used Xanax the night before his arrest. The defendant was able to provide Perez with the necessary intake information such as his address, date of birth, social security number.  At no time did the defendant become incoherent.  Perez did acknowledge that later during the interview process the defendant appeared to be under the influence of some substance, but such behavior was not present prior to the interview at the command post. Perez did acknowledge that "the symptoms that he displayed during the intake process were consistent with a drug user or being under the influence of something."[6] Agent Perez was subjected to cross-examination by defense counsel which did not negate, to any extent, his testimony on direct.

---

[6]Hearing transcript at page 58.

The Court finds the testimony offered by Agent Perez to be highly credible and persuasive. Of course, he has no interest in the outcome of these proceedings and testified as to his participation in this cause.

The government then offered the testimony of Special Agent Peter Yates of the Drug Enforcement Administration (DEA). Agent Yates took part in the arrest of the defendant, but did not take part in obtaining the consent to search. Yates testified that the defendant, following his arrest, appeared to be groggy or lethargic. However, Yates testified that the defendant was coherent and Yates understood the defendant, who also appeared to understand him. Yates also stated that the defendant did not have slurred speech.

The defendant testified that he had been a heroin user for about ten years and used heroin by smoking or snorting it. He used heroin the night before his arrest and also testified that he took a lot of Xanax to sleep. He stated that he uses heroin for his pain from injuries that he had sustained and it calmed him down. He testified that when he uses heroin he could not interact with other people and could not understand what people are asking him. He also stated that he did not remember the events of the day that he was arrested because he was on heroin but he recalled having taken Xanax. Such selective memory renders the defendant's testimony highly suspect.

In the case of *United States v. Hall*, 565 F.2d 917 (5th Cir. 1978), two individuals in a vehicle were encountered by police, who observed the defendant who appeared to be highly intoxicated and dazed. Following his arrest, the defendant consented to a search of the trunk of the car which led to incriminating evidence. The appellate court determined that the consent was voluntary and that "intoxication is a factor to consider, but that fact alone is not sufficient to undermine his consent." Further, in *United States v. George*, 987 F.2d 1428 (9th Cir, 1993), the defendant was found

comatose in the back of a taxi after having swallowed a balloon filled with heroin which later burst. After regaining consciousness in a hospital the defendant was asked for permission to search his hotel room. Subsequently, he moved to suppress evidence seized in such search. The search was upheld with the court finding that although he was in pain and on medication, he was coherent and that the consent to search was lawfully obtained.

The consent to search was found to have been given voluntarily despite the fact that the defendant had slurred speech, staggered and swayed, and supported himself by leaning on his vehicle. *United States v. Gay*, 774 F.2d 368, 376-77 (10th Cir. 1985).

The Court further finds that the testimony offered by the defendant is unreliable and lacks credibility. He, of course, has the greatest interest in the outcome of this cause which also infects his testimony. The defendant has not met his burden of establishing that he was under the influence of heroin and Xanax to the extent that his ability to comprehend the proceedings surrounding his execution of the consent to search was impaired.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, and consideration of the testimony and submissions of the parties, the undersigned respectfully

RECOMMENDS that the defendant Christian Figueroa's Motion to Suppress be DENIED.

The parties have ten (10) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Joan A. Lenard. See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 22nd day of December, 2009.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE