UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20046-CR-LENARD/GARBER

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

CHRISTIAN FIGUEROA,

        Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION (D.E. 448) AND DENYING DEFENDANT CHRISTIAN FIGUEROA'S MOTION TO SUPPRESS (D.E. 370)

THIS Cause is before the Court on the Report and Recommendation of U.S. Magistrate Judge Barry L. Garber ("Report," D.E. 448), issued on December 22, 2009, recommending that Defendant Christian Figueroa's Motion to Suppress ("Motion," D.E. 370) be denied. Defendant filed his Objections to the Report ("Objections," D.E. 456) on January 5, 2010. On January 19, 2010, the government filed its Response to Defendant's Objections ("Response," D.E. 479). After a *de novo* review of the Motion, the Report, the Objections, the Response and the record, the Court finds as follows.

### I.    Procedural Background

On January 22, 2009, a properly constituted federal grand jury issued an indictment charging Defendant with one count of conspiracy to possess heroin with intent to distribute, pursuant to 21 U.S.C. § 846. (Indictment at 18, D.E. 1.) The charge was based on information obtained from a confidential informant as well as wiretaps on the telephone lines of Defendant and his brother, Raymond Figueroa. The wiretaps had

intercepted conversations concerning the delivery of heroin between Defendant, his brother and other co-conspirators. Pursuant to the indictment, a warrant was issued for Defendant's arrest on or about January 23, 2009.

On June 4, 2009, a grand jury returned a Superseding Indictment adding three charges of possession with intent to distribute and two charges of firearm possession against Defendant, based on the recovery of heroin, cocaine and firearms at his home on January 23, 2009. (*See* Superseding Indictment (Counts 19-23), D.E. 253.) Upon the discovery that Count 18 of the Superseding Indictment (also Count 18 of the Indictment) was based on the misidentification of Defendant's voice, the government moved to dismiss this count on August 18, 2009. (D.E. 302.) Counts 19-23 remain pending.

## II.     Factual Background and Motion to Suppress Evidence

On January 23, 2009, at about 6:00 A.M., Defendant was arrested at his home in Miami-Dade County on the charge of conspiracy to possess heroin with intent to distribute. During the arrest, Special Agent Jose A. Perez ("Perez") of the FBI pulled Defendant aside and explained the consent to search form to him in both English and Spanish. Defendant indicated that he understood English and executed the consent to search. Perez later recalled that the Defendant appeared a little dazed that morning, attributing the condition to being surprised by agents coming to his home at such an early hour. Another Special Agent, Peter Yates ("Yates") of the DEA, recalled that Defendant was groggy and lethargic immediately following his arrest. Both Yates and Perez also recalled that despite appearing dazed, Defendant was coherent and had no trouble understanding them and vice versa.

The subsequent search of Defendant's home revealed the presence of approximately fifty (50) grams of heroin and two (2) guns with rounds of ammunition. During processing several hours after the arrest, Perez observed Defendant sitting with his head and eyes moving about the room, "consistent with a drug user or being under the influence of something." (Mot. to Suppress Tr. at 58, D.E. 445.)[1] Defendant admitted to Perez that he had used heroin the night before. Defendant also claimed that he had taken Xanax the night before his arrest. Tr. at 69. Defendant nevertheless was able to provide Perez with necessary intake information, such as date of birth, social security number and address. As discussed in **Section I**, *supra*, a Superseding Indictment issued forth on June 4, 2009, adding three additional charges against Defendant for possession of heroin and cocaine with intent to distribute and two charges for possession of firearms.

Defendant now moves to suppress evidence seized at his home on the morning of January 23, arguing that his consent to the search was involuntary and the indictment, upon which the arrest warrant issued, was invalid.

Defendant first argues that the original indictment which led to his arrest was based wholly on inaccurate information presented to the grand jury. Specifically, investigators incorrectly identified Defendant as having made the intercepted calls regarding heroin trafficking. In actuality, Defendant's brother Raymond Figueroa was the caller. Therefore, the basis of the arrest warrant was invalid and all evidence recovered at Defendant's home, despite his consent, was the direct result of the wrongful

---

[1] All further references to the Motion to Suppress Transcript shall be in the form "Tr. at ##."

3

indictment.  Defendant also contends that because he had used heroin and Xanax the night before his arrest, he was impaired the following morning and did not give voluntary consent to the search of his home.

In response, the government argues that the original indictment was valid on its face, issued by a properly constituted grand jury and not subject to challenge based on the inadequacy of the evidence presented.  The government further argues that intoxication alone does not negate the voluntariness of Defendant's consent to search.  Even if Defendant was intoxicated or suffering from withdrawal, his condition did not render him incoherent and unresponsive, thus his consent was voluntary.

### III.    The Report and Objections

In his Report, the Magistrate recommends denying Defendant's Motion to Suppress.  The Report finds that the issue of the lawfulness of the indictment and Defendant's subsequent arrest to be governed by the principle set forth in *Rodriguez v. Ritchey*, that "an indictment by a properly constituted grand jury conclusively determines the existence of probable cause."  556 F.2d 1185, 1190-91 (5th Cir. 1977).

The Report explains that an indictment returned by a properly constituted grand jury, valid on its face, cannot be challenged by a defendant on grounds that the evidence presented was inadequate.  *See* Report at 3, citing *United States v. Calandra*, 414 U.S. 338 (1974) and *Costello v. United States*, 350 U.S. 359, 363 (1956).  Based on a valid indictment, Defendant's arrest was therefore lawful.

The Report also finds that Defendant cannot establish that he was under the influence of heroin and Xanax to the extent that his ability to comprehend the proceedings

4

surrounding his consent was impaired.  *See* Report at 7.  This finding is based on the testimony of the agents who observed Defendant to be coherent and able to answer basic questions for the intake report.  *Id.* at 5-6.  The Report declines to credit Defendant's selective memory and highly suspect testimony.  *Id.* at 6.  The Report also notes that other Circuit Courts of Appeal have upheld consents to search in circumstances where a defendant appeared more intoxicated than here, and finds instructive the Ninth Circuit's determination that "intoxication is a factor to consider, but that fact alone is not sufficient to undermine . . . consent."  *Id.* at 6-7, citing *United States v. George*, 987 F.2d 1428, 1430 (9th Cir. 1993).

Defendant objects to both findings of the Report.  He contends that the January 22, 2009 indictment was based solely on telephone conversations incorrectly attributed to him.  Objections at 2-3.  To support his point, Defendant cites Justice Burton's concurring opinion in *Costello* that seems to suggest that if a grand jury had no "substantial or rationally persuasive evidence before it" upon which to base its indictment, that indictment should be quashed.  *Costello*, 350 U.S. 359, Burton, J. concurring.  Concerning the voluntariness of his consent to search, Defendant stresses that his memory lapses are part and parcel of ten years of heroin use.  Defendant urges this Court to consider the totality of the circumstances, including his long term drug usage and symptoms of heroin withdrawal, and find that his consent was involuntary.

In its Response, the government explains that the misidentification of Defendant's voice was based on several facts, most notably the DEA's controlled purchases of heroin from Defendant set up by the confidential informant's calls over the intercepted telephone

5

line. Response at 3-4; *see* Tr. at 12-17. These calls resulted in at least one controlled purchase of heroin from Defendant's organization. Tr. at 15. Defendant had previously been linked to the wiretapped phone line during a monitored purchase of heroin from co-conspirator Rafael Rodriguez in June 2008. *Id.* at 17. Thus, the warrant for Defendant's arrest was valid at the time it was issued; misidentification of Defendant's voice notwithstanding. The government argues that the rationale of *Rodriguez* is controlling here, with Defendant failing to provide any legal authority holding otherwise. Response at 3-4, citing 556 F.2d at 1190-91.[2]

## IV. Discussion

### A. Defendant's Unlawful Arrest Claim

It is well established that an indictment returned by an unbiased and legally constituted grand jury may not be challenged on the grounds that it is based on incompetent or inadequate evidence. *See Costello*, 350 U.S. at 363-64 (grand jury issued indictment based on hearsay evidence); *United States v. Calandra*, 414 U.S. 338 (1974) (grand jury issued indictment based on evidence obtained in violation of the Fourth Amendment); *United States v. Norton*, 867 F.2d 1354, 1358 (11th Cir. 1989) (defendant's challenge to the sufficiency of evidence presented to the grand jury was foreclosed by the *Costello* rule). "The grand jury does not sit to determine the truth of the charges brought against a defendant, but only to determine whether there is probable cause to believe them true, so as to require him to stand his trial." *Anderson v. Sec'y for the Dep t of*

---

[2] The Response also rebuts Defendant's Objections regarding the voluntariness of his consent; however, no new argument is presented.

*Corrections,* 462 F.3d 1319, 1326 (11th Cir. 2006) (citing *Bracy v. United States*, 435 U.S. 1301, 1302-03 (1978)).  To hold otherwise would be to allow each defendant to potentially have a "kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. *Costello*, 350 U.S. at 363-64 ("[i]f indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed").

In *Bracy*, the Supreme Court stated that the "presentation of otherwise inadmissible evidence before the grand jury does not pose a substantial threat to the integrity of [the] factfinding process as would the presentation of similar evidence at trial." 435 U.S. at 1302-03.  *Bracy* involved indictments based partly on a witness' perjury before the grand jury. *Id.* at 1301.  At trial, the witness admitted his perjured testimony to the grand jury at which time the defendants moved to dismiss the indictment. *Id.* at 1301-02 (the District Court denied the motion and the Ninth Circuit affirmed).  The Supreme Court agreed with the courts below, holding that the grand jury's consideration of hearsay evidence, evidence obtained in violation of the Fourth Amendment or evidence otherwise inadmissible at trial, would not invalidate an indictment. *Id.* at 1302; *see also Anderson*, 462 F.3d at 1325 (Eleventh Circuit cites *Bracy* for the proposition that an indictment would not be invalidated by a witness' perjury before the grand jury).

This Circuit has also accepted the principle that properly constituted grand jury may conclusively determine the existence of probable cause, providing authority for an arrest warrant to issue. *Rodriguez*, 556 F.2d at 1190-91; *Anderson*, 462 F.3d at 1326.  *Rodriguez* involved a voice misidentification of a suspect similar to the instant case.

7

*Rodriguez*, 556 F.2d at 1187.  There, agents believed they had correctly identified and located a woman suspected of illegal gambling activities.  *Id.*  Without comparing recordings of various phone conversations to confirm that investigators had identified the correct suspect, the case agent testified in front of a properly constituted federal grand jury.  *Id.*  His testimony resulted in the indictment of Ms. Rodriguez and the issuance of a warrant for her arrest.  *Id.*  Approximately one year later, the government learned of its mistake and dismissed the indictment of Ms. Rodriguez.  *Id.* at 1188.  Ms. Rodriguez subsequently filed suit against the arresting agents and investigators for violating her *Fourth Amendment* rights, alleging lack of probable cause for her arrest.  *Id.*  She claimed that her indictment was the "result of negligent police conduct."  *Id.*  On appeal of the District Court's denial of defendants' motions to dismiss, the Eleventh Circuit, sitting *en banc*, held that an arrest "under a valid warrant issued pursuant to a properly constituted grand jury indictment" cannot support a cause of action under the *Fourth Amendment*.  *Id.* at 1194.  In coming to its conclusion, the Eleventh Circuit reasoned:

> It is true that the fourth amendment does command that probable cause support a warrant. However, just because a person validly arrested is later discovered to be innocent does not make the arrest "unlawful" for fourth amendment purposes.  To the contrary, it has long been settled that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant to issue. The conclusion to be drawn is readily apparent: Since there was no unconstitutional arrest, no claim has been stated . . .

*Id.* at 1190-91.

Defendant alleges that absent the presentation of misidentified telephone conversations to the grand jury by investigators, no indictment would have been returned.

8

However, Defendant cites no authority that would require quashing the underlying indictment on this ground. Nor is the Court aware of any authority that would carve out such an exception to *Costello, Rodriguez* or their progeny.

The government sets forth several bases for its identification of Defendant's voice on the intercepted calls. Response at 3. Upon review of these facts, set forth in the Magistrate's hearing on the Motion, the Court finds that the investigators' misidentification of Defendant's voice an honest mistake, based on reasonable deductions, investigation and information provided by agents and the confidential informant. *See, generally*, Tr. at 13-38. Furthermore, Defendant does not allege, nor does the record contain any evidence, that the misidentification of Defendant's voice to the grand jury was the result of prosecutorial misconduct or perjury. *See United States v. Roth*, 777 F.2d 1200, 1204 (7th Cir. 1985) (suggesting that basis for dismissing an indictment would exist where the government knew it was presenting perjured evidence and the indictment may not have been issued but for such evidence); *but see Anderson*, 462 F.3d at 1327 (interpreting Justice Rehnquist's opinion in *Bracy* to suggest that an indictment based on perjury would stand). Finally, evidence including misidentification of Defendant, presented to the grand jury on January 22, 2009, albeit in good faith, sufficiently set forth the required elements of 21 U.S.C. § 846 to legally sustain the indictment for conspiracy to possess heroin with intent to distribute.

Consequently, Defendant has not articulated any legal basis for this Court to find

that the January 22, 2009 indictment, issued by a legally constituted grand jury, is invalid.

### B.     Defendant's Consent to Search

A consensual search is constitutional if it is voluntary; if it is the product of an "essentially free and unconstrained choice." *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (citations omitted).  The evaluation of voluntariness is a factual inquiry that depends on the totality of the circumstances.  *Id.*   In making this evaluation, the Court should look at several indicators, "including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." *Id.*    Intoxication is but one factor to consider, but not dispositive.  *United States v. Hall*, 565 F.2d 917, 921 (5th Cir. 1978).

Both the government and Defendant correctly point out that the voluntariness of Defendant's consent to search must be examined by the totality of the circumstances.  No dispute exists that Defendant used heroin and Xanax the night before his arrest.  Additionally, Defendant does not contest the agents' testimony that no coercion was used and Defendant was made aware of his rights. *See, generally*, Tr. at 43-72.  Rather, Defendant's only argument is that his impairment and/or withdrawal from heroin and Xanax coupled with ten years of heroin use rendered him unable to give a meaningful and voluntary consent.  Thus, this Court will focus chiefly on Defendant's alleged intoxication

while mindful of the totality of the circumstances surrounding his consent to the search.

At the hearing for the motion to suppress, both Perez and Yates testified that at the time of his arrest, at around 6:00 A.M. on January 23, Defendant appeared "dazed," "groggy or lethargic," "possibly hung over" and he "fell asleep at one point." Tr. at 44, 61 and 64-65. Approximately two hours later, during intake processing, Defendant appeared "drastic[ally]" different; his head and eyes moving about the room. *Id.* at 51. Special Agent Perez recalled that Defendant's behavior "was consistent with a drug user or being under the influence." *Id.* at 58. Nevertheless, both agents recalled that Defendant understood their questions and instructions, and vice versa. *Id.* at 51-52, 62-63. Perez testified that Defendant executed the consent to search form without any questions. Perez also recalled that during intake processing Defendant was able to answer questions clearly and consistently. *Id.* at 50-52. Defendant then took the stand and testified that due to his heroin and Xanax use on January 22, he had no recollection of events of January 23, including all the circumstances surrounding his arrest. *Id.* at 72.

In his Report, the Magistrate Judge found the Special Agents' testimony to be credible, while deeming Defendant's "selective memory" to be "highly suspect." Report at 6. Where the issue of consent turns on a credibility choice from conflicting testimony, the determination lies within the province of the factfinder. *United States v. Anthony*, 345 Fed. Appx. 459, 461 (11th Cir. 2009) (affirming the denial of Defendant's motion to suppress after determining the testimony of three police officers was more credible than

that of defendant's mother).  This Court has no reason to disturb the Magistrate's credibility assessment.  Special Agent Perez established that he explained the consent to search form clearly to Defendant, and both agents confirmed that Defendant was coherent, spoke without impediment, and appeared to fully understand them.  On the other hand, Defendant's blanket assertion that he has no recollection of his arrest is extremely self-serving.  Therefore this Court defers to the Magistrate's finding that the government's witnesses were more credible than Defendant.  *Cf. Anthony*, 345 Fed. Appx at 461.

Moreover, this Court finds persuasive the holdings of other courts, where defendants were found to have consented to a search despite appearing far more intoxicated than in the instant case.  *See George*, 987 F.2d at 1430-31 (consent found voluntary where defendant in critical condition consented to a search shortly after regaining consciousness following a heroin overdose); *United States v. Gay*, 774 F.2d 368, 376-77 (10th Cir. 1985) (consent voluntary where defendant staggered, swayed, leaned on his vehicle to support himself and slurred his speech).  Here, Defendant appeared coherent throughout his interactions with the agents and at the time of his consent; in short, his condition was far better than that of the defendants in *George* and *Gay*.  Consequently, this Court finds that under the totality of the circumstances, Defendant's consent to search his home was given voluntarily.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.     The Report of the Magistrate Judge (D.E. 448), issued on December

      22, 2009, is **ADOPTED**.

    2.     Defendant Figueroa's Motion to Suppress (D.E. 370) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of April, 2010.

                                                        **JOAN A. LENARD**
                                                        **UNITED STATES DISTRICT JUDGE**